UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITE HERE! LOCAL 2, | Case No.  21-cv-01801-DMR |
| Plaintiff, | |
| v. | **ORDER ON MOTION TO COMPEL ARBITRATION** |
| TASTES ON THE FLY, INC., | Re: Dkt. No. 9 |
| Defendant. | |

Petitioner UNITE HERE! Local 2 filed this case on March 15, 2021, seeking to compel Respondent Tastes on the Fly, Inc. to arbitrate a labor dispute pursuant to the collective bargaining agreement ("CBA") between the parties.  [Docket No. 14, Amended Verified Petition ("AVP").]  On March 17, 2021, Petitioner filed a motion to compel arbitration.  [Docket Nos. 9 ("Mot."), 18 ("Reply").]  Respondent opposes.  [Docket No. 15 ("Opp.").]  The motion is suitable for determination without oral argument pursuant to Civil L.R. 7-1(b).

For the reasons stated below, the motion is granted.

## I.    BACKGROUND

The following facts are undisputed except where noted.  Petitioner is a labor organization that represents hospitality and food service industry employees.  AVP ¶ 4.  Relevant to this case, Petitioner represents employees of food and beverage concession outlets at the San Francisco International Airport ("SFO").  *Id.*  Respondent is a concessions contractor that operates various concessions outlets at SFO and employs individuals who are represented by Petitioner.  *Id.* ¶ 5.  Petitioner and Respondent are parties to a multi-employer collective bargaining agreement that covers all employees of SFO's concession outlets except for clerical employees, guards, and supervisors.  *Id.* ¶ 6.  The CBA at issue was in effect from September 1, 2013 through August 31,

1    2019.  *Id.*; *see* AVP, Ex. A ("CBA").

2         Under the CBA, a "grievance" is defined as a "dispute or difference of opinion between

3    [Petitioner] and [party employers] involving the meaning/interpretation, application to employees

4    covered by this Agreement, or alleged violation of any provision of this Agreement."  CBA §

5    41(a).  Section 41 of the CBA lays out a four-step grievance and arbitration procedure.  At Step

6    One, grievances are submitted to the Human Resource Manager, or other designee, of the

7    restaurant employer.  CBA § 41(c).  If a settlement is not reached within seven days, the grievance

8    proceeds to Step Two, at which point Petitioner has ten days to request a grievance mediation.

9    CBA § 41(d).  Step Three is the grievance mediation hearing, which must be held within thirty

10   days of the written request unless the agreed-upon mediator is not available, and in that case, the

11   hearing "shall be scheduled as soon as practicable."  CBA § 41(e).  The fourth and final step is

12   arbitration.  The CBA provides that an arbitration shall be scheduled if it is requested within 10

13   days after the failure of mediation.  CBA § 41(g).  The arbitration hearing "shall commence as

14   soon as practical following the demand for arbitration."  CBA § 41(h)(1).  The arbitrator is chosen

15   from a panel of seven provided by the Federal Mediation and Conciliation Service ("FMCS").

16   CBA § 41(l).  Any decision by the arbitrator is final and binding.  CBA § 41(i).

17        On December 28, 2017, Petitioner filed Grievance SFO(2)-2-18 ("First Grievance"), which

18   alleged that Respondent violated the CBA by implementing a layoff of bargaining unit employees

19   at an SFO concession outlet without observing the seniority provisions set forth in the hiring,

20   retention, recall, and layoff provisions of the CBA.  AVP ¶ 9.  On January 9, 2018, Petitioner and

21   Respondent held a Step One grievance meeting but were unable to resolve the dispute.  *Id.* ¶ 10.

22   On January 17 and January 30, 2018, the parties held Step Two grievance meetings, which were

23   also unsuccessful.  *Id.*  On February 7, 2018, Petitioner sent a grievance mediation notice and

24   request.  *Id.*; *see* AVP, Ex. G (Grievance Mediation Notice and Request).  The parties participated

25   in a grievance mediation on March 23, 2018, but still were not able to resolve the dispute.  AVP ¶

26   11.  Following the mediation, a union representative completed a Submission to Arbitration form

27   and handed a copy of the form to Respondent.  *Id.*; *see* AVP, Ex. G (Submission to Arbitration

28   form, dated March 23, 2018).

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1    Between April and June 2018, Respondent offered new positions at its other SFO outlets to

2    the employees who had been affected by the allegedly improper layoff.  AVP ¶ 12.  Petitioner

3    asserts that the rehiring of affected employees cut off Respondent's liability for backpay and

4    benefits, but "did not resolve the underlying dispute regarding the meaning of the contract and the

5    workers' lost wages and benefits during the months they were laid off."  Id.  It is undisputed that

6    the First Grievance was never arbitrated, which is the subject of the current motion.

7    On August 27, 2018, Petitioner filed Grievance (9)-2-18 ("Second Grievance"), which

8    related to the seniority-based recall rights of two laid off bartenders employed by Respondent at a

9    different SFO outlet.  AVP ¶ 13; see Docket No. 15-2, Declaration of Brian Walker ("Walker

10   Decl."), Ex. C (email from Petitioner's field representative Leo Volobrynskyy, dated August 27,

11   2018).  The two bartenders at issue in the Second Grievance had also been part of the First

12   Grievance. The Second Grievance proceeded through the grievance process and a mediation

13   hearing but did not resolve.  AVP ¶ 13.  In early 2019, Petitioner forwarded both grievances to

14   Beth Ross, the union's outside counsel.  Id. ¶ 14.  On April 3, 2019, Ross and Respondent's

15   General Manager, Brian Walker, communicated with each other.[1]  Id.  Petitioner asserts that the

16   two "agreed to work cooperatively to resolve each grievance one at a time, whether through

17   settlement or arbitration, starting with the [Second Grievance]."  Id.  Respondent disputes this

18   account.  See Opp. at 8.  Walker testifies that he does not remember entering into any agreement to

19   suspend the grievance arbitration process with respect to the First Grievance and also states that he

20   does not have any written record of such an agreement, even though it is his habit to memorialize

21   communications with Petitioner about the grievance arbitration process.[2]  Walker Decl. ¶¶ 8-9.

22   According to Petitioner, the parties continued discussing the Second Grievance for some

23   months until it became clear in September 2019 that the grievance would have to be arbitrated.

24   AVP ¶ 15.  On September 6, 2019, Ross wrote to Respondent's Chief Operating Officer Meredith

25   Genochio about the First Grievance, and requested Genochio's availability to discuss moving that

26

27   [1] Since the AVP just says that the two "made contact," it is unclear whether this conversation happened in person, over the phone, by email, or through some other method.

28   [2] Walker does not confirm whether he and Ross spoke on April 3, 2019.

grievance forward.  *Id.*; *see* AVP, Ex. C (email from Beth Ross, dated Sept. 6, 2019).  Genochio did not directly respond to that email, but she, Walker, and Ross exchanged other emails in September and October 2019, which appear to relate largely to the First Grievance.  *See* AVP, Ex. D (email exchanges between Beth Ross, Brian Walker, and Meredith Genochio).  As part of that exchange, Genochio wrote, "We are looking forward to resolving these two grievances soon."  *Id.* Petitioner represents that the parties kept trying to resolve the Second Grievance from November 2019 through August 2020, with some delays caused by COVID-19.  AVP ¶ 17.  A settlement agreement for that grievance was executed in September 2020.  *Id.*

On November 24, 2020, Ross wrote to Respondent's counsel, Arthur Gaus, about selecting an arbitrator for the First Grievance.  AVP ¶ 18; *see id.*, Ex. E (email from Beth Ross to Arthur Gaus, dated Nov. 24, 2020).  She stated "[n]ow that we have [the Second Grievance] behind us – time has come to move forward with the [First Grievance]" and expressed a desire that the parties reach an agreement without the need for a hearing.  *Id.*, Ex. E.  Gaus wrote back and said, "I need to speak with my client briefly, but it is my hope that it can be resolved without hearing as well." *Id.*  Petitioner asserts that, between November 30, 2020 and December 29, 2020, Ross and Gaus had several conversations about resolving the First Grievance and selecting an arbitrator.  AVP ¶ 19.  On December 29, 2020, Gaus proposed Catherine Harris from the FMCS panel to serve as an arbitrator for the dispute.  *Id.* ¶ 20.  On January 7, 2021, Ross and Gaus had a phone call during which they agreed to appoint Harris to arbitrate the First Grievance.  *Id.* ¶ 21.  According to Petitioner, Gaus allegedly asserted on several occasions that the grievance was untimely but agreed that the issue of timeliness was a matter for the arbitrator to resolve.  *Id.*  On February 26, 2021, the attorneys again spoke on the phone and Gaus authorized Ross to contact the FMCS regarding the appointment of Harris as arbitrator for the outstanding dispute.  *Id.* ¶ 22.  Ross completed the arbitrator selection form and sent it to FMCS, Harris, and Gaus.  *Id.*; *see id.*, Ex. F (email and attachment from Beth Ross, dated Feb. 26, 2021).  On March 1, 2021, Gaus called Ross and told her that Respondent would not agree to move forward with arbitrating the First Grievance.  *Id.* ¶ 23.

Petitioner now moves to compel Respondent to arbitrate the First Grievance.  Respondent

4

United States District Court
Northern District of California

1   opposes on the basis that the First Grievance is untimely because it was brought over three years

2   ago, which is clearly outside the timeline contemplated by the CBA's arbitration agreement.

3       The parties disagree over whether this court or an arbitrator should resolve the issue of

4   timeliness.

5   **II.    DISCUSSION**

6       Section 301(a) of the Labor Management Relations Act ("LMRA"), provides federal

7   jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization."

8   29 U.S.C. § 185(a).  This jurisdiction includes the power to enforce agreements that require

9   resolution of disputes through arbitration.  *See Textile Workers Union of Am. v. Lincoln Mills of*

10  *Ala.*, 353 U.S. 448, 455 (1957).  The district court decides in the first instance whether a collective

11  bargaining agreement "creates a duty for the parties to arbitrate the particular grievance." *AT & T*

12  *Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648-49 (1986).  Arbitration clauses create

13  a presumption of arbitrability such that "disputes involving the agreement's substantive provisions

14  must be arbitrated unless it may be said with positive assurance that the arbitration clause is not

15  susceptible of an interpretation that covers the asserted dispute." *Loc. Joint Exec. Bd..*, *Loc. Joint*

16  *Exec. Bd. v. Mirage Casino-Hotel, Inc.*, 911 F.3d 588, 596 (9th Cir. 2018) (cleaned up).  While the

17  court decides whether the arbitration agreement covers the subject matter of the dispute, questions

18  of procedural arbitrability related to that dispute "are presumptively for the arbitrator."  *Id.*

19      **A.    Scope of the Arbitration Agreement**

20      The CBA's grievance and arbitration procedure defines a grievance as a "dispute or

21  difference of opinion between [Petitioner] and [party employers] involving the

22  meaning/interpretation, application to employees covered by this Agreement, or alleged violation

23  of any provision of this Agreement."  CBA § 41(a).  Petitioner contends that the First Grievance

24  clearly falls within this definition since it asserts that Respondent violated the CBA's provisions

25  regarding hiring, retention, recall, and layoffs. Mot. at 6-7.  Respondent agrees that the underlying

26  substantive dispute is a "grievance" as defined under the CBA.  *See* Opp. at 7 ("The parties do not

27  dispute . . . that this dispute is covered by §41 of the CBA . . . .").  The record also reflects that

28  Respondent resisted arbitration of the First Grievance on the basis of timeliness and not because

5

United States District Court
Northern District of California

the subject matter of the grievance fell outside the scope of the arbitration agreement.  *See* AVP ¶¶ 21-23.  Given the broad scope of the arbitration provision and the parties' lack of disagreement on this point, the court finds that the CBA "creates a duty for the parties to arbitrate" the substantive disputes raised by the First Grievance.  *See AT & T Techs., Inc.*, 475 U.S. at 649.

## B.    "Strictly Procedural" Exception

The crux of the parties' disagreement is whether the court or the arbitrator should decide if the First Grievance is timely.  On this point, Petitioner argues that "procedural defenses to a grievance," such as defenses based on timeliness, "are for an arbitrator and not a court to decide." Mot. at 7.  Respondent appears to concede that generally an arbitrator adjudicates procedural defenses in the context of a grievance arbitration.  *See* Opp. at 5.  However, it argues that there is an exception to this general rule when there is a strictly procedural question about timeliness and resolution of that question would "preclude the entire need for arbitration."  *Id.* at 6.  Respondent contends that the court should apply the "strictly procedural" exception in this case because the parties agree on the timeline with respect to the First Grievance and resolving the issue of timeliness will preclude the need for arbitration.

Both parties cite to *John Wiley & Sons, Inc. v. Livingston* as support for their respective positions.  *See* 376 U.S. 543 (1964).  As Petitioner points out, that case held that "[o]nce it is determined . . . that the parties are obligated to submit the subject matter of a dispute to arbitration, 'procedural' questions which grow out of the dispute and bear on its final disposition should be left to the arbitrator."  *Id.* at 557.  It argues that this means judicial "inquiry ends upon determining the dispute is subject to arbitration" and that any procedural issues (including timeliness) must be resolved in arbitration.  Mot. at 7 (quoting *Loc. Union No. 370 of Int'l Union of Operating Engineers v. Morrison-Knudsen Co.*, 786 F.2d 1356, 1358 (9th Cir. 1986)). However, as Respondent points out, *Wiley* also says that "a court could deny arbitration only if it could confidently be said not only that the claim was strictly 'procedural,' and therefore within the purview of the court, but also that it should operate to bar arbitration altogether, and not merely limit or qualify an arbitral award."  376 U.S. at 557-58.  It contends that the exception recognized in *Wiley* should be applied here because the only remaining dispute between the parties is strictly

6

United States District Court
Northern District of California

procedural and resolution of that issue would operate to bar arbitration.

Upon consideration of the parties' authorities, the court agrees with Petitioner that the issue of timeliness must be resolved by an arbitrator. First, while *Wiley* stated in dicta that there may be cases where the court could decide a strictly procedural issue, it also emphasized that such cases "are likely to be rare indeed." 376 U.S. at 558. The Court explained that procedural questions are often intertwined with the merits of a case such that both issues should be decided in the same forum:

> We think that labor disputes of the kind involved here cannot be broken down so easily into their 'substantive' and 'procedural' aspects. Questions concerning the procedural prerequisites to arbitration do not arise in a vacuum; they develop in the context of an actual dispute about the rights of the parties to the contract or those covered by it.
> . . .
> Doubt whether grievance procedures or some part of them apply to a particular dispute, whether such procedures have been followed or excused, or whether the unexcused failure to follow them avoids the duty to arbitrate cannot ordinarily be answered without consideration of the merits of the dispute which is presented for arbitration.

*Id.* at 556-57. In this case, the parties disagree over the meaning of the CBA's mandate that an arbitration hearing "shall commence as soon as practicable following the demand for arbitration." CBA § 41(h)(1). While Respondent contends that there is a "common sense determination that a three year old grievance is untimely" under the CBA, Opp. at 2, Petitioner asserts that the parties had agreed to postpone resolution of the First Grievance until they had resolved the Second Grievance, Reply at 3. Whether Petitioner's reasons for not pursuing arbitration earlier are consistent with the CBA's "as soon as practicable" language is squarely a matter of interpretation. Since the CBA broadly defines a grievance as any dispute "involving the meaning/interpretation . . . . or alleged violation of any provision of this Agreement," the parties' dispute about timeliness cannot be extricated from their substantive disagreement about the meaning of the CBA. Thus, this is not the kind of "rare" case in which the court can decide an isolated and strictly procedural issue.

Second, while the Ninth Circuit has recognized that there is "some support for the proposition that a court may consider a strictly procedural question as to the timeliness of a demand for arbitration," Respondent has not cited any cases where a court has applied that theory.

United States District Court
Northern District of California

1   *See Retail Delivery Drivers, Driver Salesmen, Produce Workers & Helpers Loc. 588 v.*

2   *Servomation Corp.*, 717 F.2d 475, 478 (9th Cir. 1983).  In *Retail Delivery Drivers*, for example,

3   the Ninth Circuit echoed *Wiley* in stating that cases with a strictly procedural question are "rare,"

4   and determined that it was "not confronted with such an instance."  *Id.*  The two district court

5   opinions Respondent cites also recognized the theoretical possibility that strictly procedural issues

6   might exist but did not find such issues in those cases.  *See Pac. Media Workers Guild, CWA Loc.*

7   *39521 v. San Francisco Chron.*, No. 17-cv-05953-HSG, 2018 WL 3219431, at *4 (N.D. Cal. July

8   2, 2018) (declining to find the grievances untimely as a matter of law and compelling arbitration);

9   *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union,*

10  *AFL-CIO/CLC v. Vista Metals Corp.*, 2020 WL 1639895, at *6 (C.D. Cal. Apr. 1, 2020)

11  (concluding that the parties' dispute about timeliness should be decided by the arbitrator).  By

12  contrast, many courts have found that timeliness is an issue for the arbitrator.  *See, e.g., Howsam*

13  *v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002) ("[T]he presumption is that the arbitrator

14  should decide 'allegation[s] of waiver, delay, or a like defense to arbitrability.'" (citation

15  omitted)); *Serv. Emps. Int'l Union v. St. Vincent Med. Ctr.*, 344 F.3d 977, 986 (9th Cir. 2003)

16  ("The issue whether the Union timely filed the alleged violations of the agreement is an issue left

17  to the arbitrator, not this court.") (citing cases).  The weight of authority thus leans against

18  Respondent's position.

18          Finally, to the extent that a "strictly procedural" exception exists, it would only apply "in

19  those rare instances where no factual dispute exists and resolution of the issue would preclude all

20  need for arbitration."  *Retail Delivery Drivers*, 717 F.2d at 478.  Despite Respondent's assertion to

21  the contrary, there are factual disputes bearing on the issue of timeliness here.  Specifically,

22  Petitioner contends that the parties "agreed to work cooperatively to resolve each grievance one at

23  a time," starting with the Second Grievance.  AVP ¶ 14.  It explains that, due to this agreement, it

24  did not follow up on arbitrating the First Grievance until the Second Grievance was fully resolved

25  in September 2020.  *Id.* ¶¶ 17-18.  By contrast, Respondent contends that there was never any

26  agreement to postpone resolution of the First Grievance.  *See* Walker Decl. ¶¶ 8-9.  Whether the

27  parties agreed to hold off on arbitrating the First Grievance is a disputed factual issue that

28  precludes the court from deciding whether the grievance is timely.  *See Retail Delivery Drivers*,

717 F.2d at 478 (declining to rule on the parties' timeliness dispute where the union had "claimed a reason for finding it had complied with the timeliness requirements" of the collective bargaining agreement).

In sum, Respondent has not offered a compelling reason to depart from the general rule that procedural disputes should be decided by an arbitrator.

### C.     Prejudice

Respondent argues that arbitration would be prejudicial because it would force Respondent to "address the underlying factual merits of events that took place more than two years ago after memories have faded and documentary evidence is more difficult to interpret, to the extent it exists at all." Opp. at 9. Respondent did not offer any authority that the court may account for prejudice in deciding whether the parties agreed to arbitrate a particular dispute. To the contrary, judicial "inquiry ends upon determining that the dispute is subject to arbitration." *Operating Engineers*, 786 F.2d at 1358. Since the court decided above that the First Grievance is subject to arbitration, any remaining questions must be left to the arbitrator.

## III.     CONCLUSION

For the reasons stated above, the court grants Petitioner's motion to compel arbitration. Respondent is ordered to submit Grievance SFO(2)-2-18 to arbitration pursuant to the terms of the CBA. It is further ordered that this case is administratively closed pending completion of the arbitration. The parties shall file a notice with the court within two weeks of a final ruling in the arbitration.

**IT IS SO ORDERED.**

Dated: August 2, 2021



Donna M. Ryu
Judge Donna M. Ryu
United States Magistrate Judge